IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

KENNETH E. DEAN                                                PLAINTIFF


          v.                          CIVIL NO. 20-5002


ANDREW M. SAUL, Commissioner
Social Security Administration                                 DEFENDANT


## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Kenneth E. Dean, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claims for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) benefits under the provisions of Titles II and XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

## I.     Procedural Background:

Plaintiff protectively filed his current applications for DIB and SSI on April 17, 2017, alleging an inability to work since September 1, 2016, due to knee and back problems and chronic obstructive pulmonary disease. (Tr. 46, 174, 178). An administrative hearing was held on December 20, 2018, at which Plaintiff appeared with counsel and testified. (Tr. 24-43).

By written decision dated January 30, 2019, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe. (Tr. 13).

Specifically, the ALJ found Plaintiff had the following severe impairments: degenerative disc disease, chronic obstructive pulmonary disease (COPD), esophagitis, hyperlipidemia, and hand tremors. However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 13). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can occasionally climb, balance, crawl, kneel, stoop, and crouch and frequently finger and handle bilaterally but must avoid even moderate exposure to pulmonary irritants like dust, odors, chemicals and gases.

(Tr. 13). With the help of a vocational expert, the ALJ determined Plaintiff could perform work as a cashier II, a marking clerk, and a routing clerk. (Tr. 17).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on October 31, 2019 (Tr. 1-6). Subsequently, Plaintiff filed this action. (Doc. 2). Both parties have filed appeal briefs, and the case is before the undersigned for report and recommendation. (Docs. 12, 13).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

## II.    Evidence Presented:

At the administrative hearing held before the ALJ on December 20, 2018, Plaintiff, who was fifty-one years of age, testified he had an eleventh grade education. (Tr. 27-28). The record reflects Plaintiff's past relevant work consists of work as an auto mechanic.

The pertinent medical evidence for the time period in question reflects the following. On October 6, 2016, Plaintiff was seen at First Care South by Dr. Shawn P. Brown for a preventative

exam and a follow-up regarding his gastroesophageal reflux disease (GERD). (Tr. 307-311). Plaintiff reported he had not seen a doctor in over thirty years. Plaintiff indicated he smoked one package of cigarettes a day, drank six beers a day and used marijuana. Plaintiff also reported moderate GERD symptoms. Plaintiff's physical exam was normal. Dr. Brown indicated Plaintiff had a normal memory and appropriate mood and affect. Plaintiff was encouraged to stop smoking, monitor his blood pressure at home, and to increase his activity.

On November 10, 2016, Plaintiff was seen at First Care South by Dr. Brown for a follow-up for his hypertension, dyspepsia, hyperlipidemia, and polycythemia. (Tr. 304-306). After examining Plaintiff, Dr. Brown ordered further lab testing and continued medication.

On December 24, 2016, Plaintiff presented to the Washington Regional Medical Center emergency room with complaints of chest pain. (Tr. 268-285). Plaintiff reported he used marijuana, smoked one package of cigarettes a day and drank up to a twelve pack of beer a night. Upon examination, Plaintiff exhibited a normal range of motion of the neck, back and upper and lower extremities. Plaintiff had a normal psychiatric exam. An EKG revealed NSR with Q waves in V1 and V2 but was otherwise unremarkable. A CT angiogram of the chest revealed no evidence of pulmonary embolus or acute airspace disease and emphysema. Plaintiff was assessed with unspecified chest pain. Plaintiff was set up for an out-patient stress test and discharged home in stable condition.

On January 23, 2017, Plaintiff underwent a cardiac stress test that revealed a fairly unremarkable exercise tolerance. (Tr. 286). Plaintiff demonstrated good exercise tolerance without EKG evidence of ischemia.

On February 16, 2017, Plaintiff was seen at First Care South by Dr. Brown for a wellness exam and to address his high cholesterol, emphysema, and GERD. (Tr. 299-303). Dr. Brown noted Plaintiff was tolerating his cholesterol medication well. Plaintiff was wondering about the emphysema noted on a CT scan. Plaintiff reported he quit smoking one month ago and all was going well. Plaintiff reported he experienced dyspnea on exertion and had to stop after moderate activity for a short period of time to rest. Plaintiff reported he experienced GERD symptoms at times. With the exception of being overweight and having poor dentition, Dr. Brown noted Plaintiff had a normal physical exam. Plaintiff was prescribed medication. Dr. Brown noted a pulmonary function test would be ordered.

On April 17, 2017, Plaintiff was seen at First Care South by Dr. Garland M. Thorn, Jr. (Tr. 296-298). Plaintiff complained of sinus symptoms for the past three days. Dr. Thorn assessed Plaintiff with acute non-recurrent maxillary sinusitis and seasonal allergic rhinitis due to pollen. Plaintiff was prescribed medication and encouraged to diet and exercise.

On June 1, 2017, Plaintiff was seen at First Care South by Dr. Brown for a follow-up for his COPD, GERD, and tremor. (Tr. 293-295). Plaintiff reported he continued to experience shortness of breath with easy exertion. Dr. Brown noted Plaintiff was not on an inhaler as Medicaid now required a PA for the Spiriva he was taking. Plaintiff reported he quit smoking several months ago. Plaintiff's gastrointestinal issues were reported to be moderate and in the epigastric area. Dr. Brown noted Plaintiff was on Zantac and would be undergoing an EGD. Dr. Brown noted Plaintiff's tremor was a new complaint. Plaintiff reported it started in the left hand but was now in both hands. Plaintiff reported the tremor was worse with activity. Plaintiff indicated the tremor improved after a few beers. After examining Plaintiff, Dr. Brown assessed mild COPD, GERD

4

with esophagitis, and a benign essential tremor. Dr. Brown noted Plaintiff's tremor was not bothersome enough to start taking medication.

On June 19, 2017, Plaintiff underwent a colonoscopy that revealed diverticulosis in the sigmoid colon and in the descending colon and internal hemorrhoids. (Tr. 314-323, 344-345). Polyps were removed and sent for testing. No immediate complications were noted. Plaintiff also underwent an upper GI endoscopy that revealed LA Grade B reflux esophagitis, non-bleeding gastric ulcers with no stigmata of bleeding, a hiatal hernia, and a normal duodenum.

In a letter dated June 22, 2017, Dr. Sidney L. Vinson stated the biopsies revealed inflammation consistent with gastritis. (Tr. 324). Dr. Vinson indicated that the polyps removed were benign but were the type that could have become malignant had they not been removed. It was recommended that Plaintiff undergo a repeat colonoscopy in three years.

On August 14, 2017, Plaintiff was seen at First Care South by Dr. Brown for shakiness. (Tr. 340-341, 350-353). Plaintiff reported for the past two days he had felt lightheaded and shaky. Plaintiff reported he was really anxious and had tremors, bilaterally, in his hands. Plaintiff reported the tremors improved with alcohol but worsened with activity. Dr. Brown started Plaintiff on propranolol for his tremors. Dr. Brown noted Plaintiff also described anxiety and prescribed medication.

On August 14, 2017, Dr. Sharon Keith, a non-examining medical consultant, completed a RFC assessment opining that Plaintiff could occasionally lift or carry fifty pounds, frequently lift or carry twenty-five pounds; could stand and/or walk for a total of six hours in an eight-hour workday; could sit about six hours in an eight-hour workday; could push or pull unlimited, other than as shown for lift and/or carry; should avoid even moderate exposure to fumes, odors, gases

5

and poor ventilation; and that postural, manipulative, visual, and communicative limitations were not evident. (Tr. 53-54). On November 9, 2017, after reviewing the records, Dr. Clarence Ballard affirmed Dr. Keith's opinion. (Tr. 79-80).

On August 21, 2017, Plaintiff underwent a upper GI endoscopy that revealed a normal esophagus, a 2 cm hiatal hernia, a scar in the gastric antrum, and a normal duodenum. (Tr. 336-337, 342-343).

On September 1, 2017, Plaintiff was seen at First Care South by Dr. Brown for musculoskeletal pain and a tremor. (Tr. 338-339, 346-349). Plaintiff reported low back pain. Plaintiff indicated he had seen a chiropractor who told him he should have a MRI. Plaintiff did not have treatment by a chiropractor, just an evaluation. Plaintiff reported his tremor was better with propranolol but that it was still bothersome. Plaintiff reported he struggled with simple tasks like turning pages of a book. Plaintiff indicated it took him several hours to change a spark plug when it should have only taken him thirty minutes. A physical exam revealed Plaintiff had tenderness to the lumbar spine with moderately reduced range of motion and bilateral action tremor in the hands. Dr. Brown adjusted Plaintiff's medication and ordered a lumbar x-ray and physical therapy. Plaintiff was encouraged to keep a healthy diet and to exercise.

On October 12, 2017, Plaintiff was seen at First Care Elkins by Dr. Brown for a follow-up for his tremor and anxiety. (Tr. 455-458). Plaintiff reported at times his tremor was better but increased when he became anxious or stressed. Plaintiff reported his anxiety was a little better. Dr. Brown adjusted Plaintiff's medication.

On November 17, 2017, Plaintiff was seen at First Care South by Dr. Brown for a follow-up for his tremor, low back pain and anxiety. (Tr. 451-454). As for the tremors, Plaintiff reported

improvement with medication. Plaintiff reported he noted a slight tremor when a task required small details with tools. Plaintiff reported his anxiety was not controlled with the current medication. Plaintiff reported continued to have right-sided back pain. Upon examination, Dr. Brown noted mild bilateral hand action tremors. Plaintiff also exhibited tenderness of the lumbar spine with a mildly reduced range of motion. Plaintiff was noted as anxious but had an appropriate mood and affect and normal insight and judgment. Plaintiff's medication was adjusted and he was encouraged to exercise.

On January 4, 2018, Plaintiff was seen at First Care South by Dr. Brown for a follow-up for his essential tremor, anxiety, and elevated blood pressure. (Tr. 446-450). Plaintiff reported he had not taken his medication for his tremor due to an upset stomach. Plaintiff also reported experiencing anxious thoughts. Plaintiff reported he was told he had elevated blood pressure when he tried to donate plasma. Dr. Brown commented that Plaintiff had fine bilateral action tremors. Plaintiff had a normal memory and was not anxious. Dr. Brown noted Plaintiff's anxiety had been doing okay without medication. Medications were adjusted and Plaintiff was encouraged to exercise.

On April 5, 2018, Plaintiff was seen by First Care South by Dr. Brown for his hyperlipidemia, essential tremor, back pain and shortness of breath. (Tr. 436-441). Plaintiff noted his tremor was improved but was still bothersome and limited some fine activities with his hand. Plaintiff reported daily lower back pain. Plaintiff indicated he experienced shortness of breath with only mild activity. A physical exam revealed normal findings. Plaintiff was prescribed medication and encouraged to exercise. Dr. Brown indicated he would refer Plaintiff to a chiropractor for an evaluation.

On April 9, 2018, Plaintiff was seen by Bobby R. Pritchett, DC, for lower back pain. (Tr. 360-362). Plaintiff reported the onset of his back pain was one week ago. Plaintiff reported the pain was aggravated with bending, lifting and rotation.  Plaintiff underwent treatment.  Plaintiff was assessed with lumbar radiculitis.

On April 11, 2018, Plaintiff was seen by Dr. Pritchett for his lower back pain. (Tr. 363-365). Plaintiff reported his pain was a little better. Plaintiff underwent treatment and was assessed with lumbar facet syndrome.  Plaintiff was to undergo traction therapy at the next visit.

On April 18, 2018, Plaintiff was seen by Dr. Pritchett for his lower back pain. (Tr. 366-368). Plaintiff reported he was a little better. Plaintiff underwent treatment, to include traction. Plaintiff was assessed with lumbar facet syndrome.

On April 23, 2018, Plaintiff was seen by Dr. Pritchett for his lower back pain. (Tr. 369-371). Plaintiff reported he was a little better. Dr. Pritchett noted Plaintiff was progressing as expected. Plaintiff underwent treatment, to include traction. Plaintiff was assessed with lumbar facet syndrome.

On April 30, 2018, Plaintiff was seen by Dr. Pritchett for his lower back pain. (Tr. 372-374). Plaintiff reported he was a little better. Dr. Pritchett noted Plaintiff was progressing as expected. Plaintiff underwent treatment, to include traction. Plaintiff was assessed with lumbar facet syndrome.

On May 7, 2018, Plaintiff was seen by Dr. Pritchett for his lower back pain. (Tr. 375-377). Plaintiff reported he felt about the same. Dr. Pritchett noted Plaintiff was progressing as expected. Plaintiff underwent treatment, to include traction. Plaintiff was assessed with lumbar facet syndrome.

On May 14, 2018, Plaintiff was seen by Dr. Pritchett for upper and lower back pain. (Tr. 378-380). Plaintiff also complained of whole arm numbness. Plaintiff indicated his lower back pain was a little better. Plaintiff underwent treatment, to include traction. Plaintiff was assessed with lumbar facet syndrome and intercostal neuritis.

On May 18, 2018, Plaintiff was seen by Dr. Pritchett for upper and lower back pain. (Tr. 381-383). Plaintiff reported his pain was better. Plaintiff underwent treatment, to include traction. Plaintiff was assessed with lumbar facet syndrome and intercostal neuritis.

On May 22, 2018, Plaintiff was seen by Dr. Pritchett for lower back pain. (Tr. 384-386). Plaintiff reported his pain was better. Plaintiff underwent treatment, to include traction. Plaintiff was assessed with lumbar facet syndrome.

On May 24, 2018, Plaintiff was seen at First Care South by Dr. Brown for a follow-up for his shortness of breath and back pain. (Tr. 431-435). Plaintiff reported his shortness of breath episodes occurred daily. Dr. Brown noted Plaintiff was seen by a cardiologist and everything checked out. Plaintiff reported he was going to a chiropractor for his back pain which had not helped relieve his pain. Plaintiff reported persistent right lower back pain that radiated down his right leg. Plaintiff's physical exam was normal. Dr. Brown ordered further lung and back testing.

On June 14 2018, Plaintiff was seen at First Care South by Dr. Brown for a follow-up for his back pain and COPD. (Tr. 427-430). Plaintiff reported his back was still bothering him quite a bit. Plaintiff reported he was unable to go through with the MRI as he had a panic attack when he got there. Plaintiff requested an open MRI. Plaintiff continued to experience shortness of breath and had been using an inhaler he had at home as he had run out of the samples given to him. Plaintiff was scheduled to undergo pulmonary testing on June 21, 2018. Upon examination, Dr.

Brown noted Plaintiff exhibited tenderness with range of motion of the lumbar spine with moderate pain. Plaintiff was encouraged to exercise.

On June 20, 2018, Plaintiff underwent a MRI of the lumbar spine that revealed mild multilevel discogenic and facet degenerative joint disease of the lumbar spine worst in the lower lumbar spine. (Tr. 388-389). Dr. Michael L. Flick noted at L5-S1, there was mild anterolisthesis of L5 on S1, advanced facet hypertrophy, and mild diffuse disc bulge resulting in a mild left lateral recess narrowing and moderate bilateral neural foraminal narrowing.

On July 12, 2018, Plaintiff was seen at First Care South by Dr. Brown for a follow-up for his lumbar radiculitis and COPD. (Tr. 422-423). Plaintiff reported continued low back pain that sometimes radiated down his left upper leg. Plaintiff also reported dyspnea on exertion but indicated he could walk two miles at a steady pace and be okay. Dr. Brown noted Plaintiff had undergone pulmonary testing that revealed no airflow obstruction and normal diffusion. Lung volume suggested gas trapping. Plaintiff was noted to have normal memory and an appropriate mood and affect. Plaintiff was not anxious. Dr. Brown prescribed medication and referred Plaintiff for physical therapy.

On July 23, 2018, upon referral by Dr. Brown, Plaintiff underwent an initial examination at MANA Physical Therapy. (Tr. 391-398). Plaintiff complained of worsening left-sided back pain for the past four years. Plaintiff reported he had worked on cars for most of his life but was unable to continue this work due to his increased back pain. Plaintiff denied radiation into his lower extremities. It was determined Plaintiff would attend therapy two to three times a week for four weeks.

On July 25, 2018, Plaintiff was seen by Damon Sturdivant, DPT, for physical therapy.  (Tr. 399-400). Plaintiff reported feeling sore after doing his home exercise program the day before. Plaintiff reported his pain remained on the left side of his lower back and that the pain was about the same. Plaintiff was able to tolerate all of the exercises during the session.  Mr. Sturdivant noted Plaintiff's lumbar extension range of motion remained severely limited.  Plaintiff's rehab potential was listed as good.

On August 2, 2018, Plaintiff was seen by Mr. Sturdivant for physical therapy.  (Tr. 401-402). Plaintiff reported feeling sore since his last therapy session but his overall pain had not increased. Plaintiff reported he was sore on the day of the session and indicated he mowed his large yard the previous day. Plaintiff was able to tolerate gentle exercise progressions. Mr. Sturdivant noted Plaintiff struggled with compliance with his physical therapy plan of care but did work hard during the clinic sessions.

On August 6, 2018, Plaintiff was seen by Mr. Sturdivant for physical therapy.  (Tr. 403-404). Plaintiff reported being sore after walking and standing all day the previous day. Plaintiff indicated he did not ice or stretch the previous day. Mr. Sturdivant noted Plaintiff complained of feeling tight throughout the exercises but had less pain complaints. Plaintiff was educated on the importance of performing his home exercise plan with more consistency. Plaintiff indicated he would try to do better.

On August 10, 2018, Plaintiff was seen by Mr. Sturdivant for physical therapy.  (Tr. 405-406). Plaintiff reported his lower back was sore and tight after walking a lot at his child's school the previous day. Plaintiff demonstrated increased prone lumbar extension range of motion after

the session exercises. Mr. Sturdivant noted Plaintiff was progressing well but continued to complain of pain and soreness in the lower back during each therapy session.

On August 20, 2018, Plaintiff was seen by Mr. Sturdivant for physical therapy. (Tr. 407-408). Mr. Sturdivant noted Plaintiff had missed his last two therapy sessions. Plaintiff reported he had been able to cut wood and to load it onto and off of his truck. Plaintiff reported back pain, on both sides but without radiation down his leg. Plaintiff struggled with prone stretches during the session but reported he felt better following the exercises. Plaintiff was educated on the importance of performing his home exercise plan on a regular basis.

On August 23, 2018, Plaintiff was seen by Mr. Sturdivant for physical therapy. (Tr. 409-410). Plaintiff reported feeling sore after finishing mowing his yard. Plaintiff also reported soreness after a therapy session but it was not worse than usual. Mr. Sturdivant noted Plaintiff was responding well to therapy. Plaintiff was educated on doing anterior pelvic tilt exercises at home.

On September 5, 2018, Plaintiff was discharged from therapy. (Tr. 411). Mr. Sturdivant noted Plaintiff progressed with core strength and range of motion, but continued to complain of daily lower back pain during activities of daily living while in the clinic. Plaintiff self-reportedly struggled with his home exercise plan compliance and consistently reported he was waiting for his "disability" paperwork to go through. Mr. Sturdivant noted Plaintiff did not attend his final appointment during which a progress check had been scheduled. Plaintiff called the clinic to say he planned to return to his primary care physician as therapy had not helped.

On September 13, 2018, Plaintiff was seen at First Care South by Dr. Brown for a follow-up for his back pain and COPD. (Tr. 418-421). Plaintiff described his back pain as a deep ache.

Plaintiff reported his pain was now on both sides of his back and that physical therapy and chiropractic sessions had not helped. Plaintiff also reported some radiation down his left leg. Plaintiff indicated his inhaler use for his COPD was going ok. With the exception of tenderness and mild pain with range of motion of the lumbar spine, Dr. Brown noted Plaintiff had a normal physical exam. Dr. Brown referred Plaintiff for consideration of an epidural steroid injection. Plaintiff was encouraged to exercise.

On October 11, 2018, Plaintiff was seen at First Care South by Dr. Brown for a follow-up for hyperlipidemia, tremors, musculoskeletal pain, back pain and COPD. (Tr. 413-417). Plaintiff reported his tremors were better and only present with activity. Plaintiff indicated he was unable to tie a fishing line or bait a hook and that he had trouble opening things like cheese slices. Plaintiff indicated he no longer had a resting tremor. Plaintiff complained of bilateral forearm pain and numbness. Plaintiff also complained of back pain and shortness of breath with moderate or more exertion. Plaintiff was encouraged to exercise.

On November 1, 2018, upon referral by Dr. Brown, Plaintiff was seen by Dr. Jared Ennis for an evaluation of his pain. (Tr. 484-487). Dr. Ennis noted Plaintiff's report that his back pain was worse and that physical therapy and chiropractic treatment had both failed to relieve his pain. Plaintiff reported he used Tylenol to control his pain. Dr. Ennis noted Plaintiff exhibited a slow, stiff gait. Dr. Ennis noted Plaintiff had moderately restricted extension range of motion of the lumbar spine and mildly restricted left and right rotation of the lumbar spine. Plaintiff had normal range of motion in both the upper and lower extremities. Dr. Ennis opined a neuro/surgical evaluation was not needed. After examining Plaintiff, Dr. Ennis assessed low back pain; other intervertrbral disc displacement, lumbar region; spinal stenosis lumbar region; other spondylosis

lumbar region; and spondylolisthesis lumbar region. Dr. Ennis recommended a series of injections with lumbar facets.

On November 13, 2018, Plaintiff was seen by Dr. Ennis. (Tr. 488-491). Plaintiff reported he continued to have low back pain. Plaintiff denied difficulty with activities of daily living. Dr. Ennis noted Plaintiff had tenderness to lower lumbar facets, bilaterally. Plaintiff received a lumbar facet injection and was to return in four weeks.

III.   **Applicable Law:**

The Court reviews "the ALJ's decision to deny disability insurance benefits de novo on the record to ensure that there was no legal error and that the findings of fact are supported by substantial evidence on the record as a whole." Combs v. Berryhill, 878 F.3d 642, 645-46 (8th Cir. 2017). "Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support a conclusion." Id. The Court considers "the record as a whole, reviewing both the evidence that supports the ALJ's decision and the evidence that detracts from it." Id. The Court will not reverse an administrative decision simply because some evidence may support the opposite conclusion. Perkins v. Astrue, 648 F.3d 892, 897 (8th Cir. 2011). If, after reviewing the record, the Court finds it possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the Court must affirm the ALJ's decision. Id.

It is well established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir.2001); see also 42 U.S.C. § 423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or

psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).  A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience.  See 20 C.F.R. §§ 404.1520, 416.920.  Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his residual functional capacity.  See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982), abrogated on other grounds by Higgins v. Apfel, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. §§ 404.1520, 416.920.

## IV.    Discussion:

Plaintiff argues the following issue on appeal: 1) the ALJ erred in failing to fully and fairly develop the record; 2) the ALJ erred at Step Two for failing to perform the psychiatric review technique to evaluate Plaintiff's anxiety impairment; and 3) the ALJ erred in assessing the credibility of Plaintiff's subjective complaints.

### A.      Full and Fair Development of the Record:

The ALJ has a duty to fully and fairly develop the record. See Frankl v. Shalala, 47 F.3d 935, 938 (8th Cir.1995). The ALJ's duty to fully and fairly develop the record is independent of Plaintiff's burden to press his case. Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010). The

ALJ, however, is not required to function as Plaintiff's substitute counsel, but only to develop a reasonably complete record. "Reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial." <u>Shannon v. Chater</u>, 54 F.3d 484, 488 (8th Cir. 1995). "While an ALJ does have a duty to develop the record, this duty is not never-ending and an ALJ is not required to disprove every possible impairment." <u>McCoy v. Astrue</u>, 648 F.3d 605, 612 (8th Cir. 2011). After reviewing the entire record, the Court finds the record before the ALJ contained the evidence required to make a full and informed decision regarding Plaintiff's capabilities during the relevant time period.  Accordingly, the undersigned finds the ALJ fully and fairly developed the record.

### B.    Psychiatric Review Technique Analysis:

Plaintiff argues the ALJ failed to complete the psychiatric review technique analysis as required to evaluate Plaintiff's medically determinable anxiety impairment.

The psychiatric review technique rates a claimant's degree of functional mental limitation in four broad areas: understanding, remembering, and applying information; interaction with others; concentrating, persisting and maintaining pace; and adapting or managing oneself. 20 C.F.R. § 404.1520a. The psychiatric review technique is used to assess the severity of a claimant's impairment at Step Two. Even when an ALJ does not conduct a psychiatric review technique or rely on any physician at any prior levels of appeal to conduct one, it may still constitute harmless error. <u>Cuthrell v. Astrue</u>, 702 F.3d 1114, 1117-8 (8th Cir. 2013). Specifically, the Eighth Circuit has found harmless error in an ALJ's failure to assess a psychiatric review technique where there is no credible evidence of a severe mental impairment. <u>See</u> <u>Nielson v. Barnhart</u>, 88 F. Appx. 145, 147 (8th Cir. 2004); <u>Cakora v. Barnhart</u>, 67 F. Appx. 983, 985 (8th Cir. 2003) (per curiam).

16

A review of the record revealed Plaintiff was diagnosed and treated for anxiety during the relevant time period.  While there were times when Plaintiff was noted as "anxious," the record revealed Plaintiff's treating and examining medical providers repeatedly noted Plaintiff had a normal mood and affect with normal judgment throughout the time period in question. As late as November of 2018, Plaintiff denied experiencing anxiety or depression. (Tr. 488).  It is noteworthy that Plaintiff did not allege a mental impairment when he applied for disability, and that Plaintiff did not seek treatment from a mental health professional during the time period in question. Furthermore, a non-examining medical consultant completed the psychiatric review technique analysis and opined that Plaintiff's anxiety was a non-severe impairment. (Tr. 77). Because the medical evidence failed to demonstrate Plaintiff's mental condition was severe, the ALJ was not required to complete the psychiatric review technique.

### C.    Subjective Complaints and Symptom Evaluation:

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).  While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole.  Id.  As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide."  Edwards, 314 F.3d at 966.

After reviewing the administrative record, it is clear that the ALJ properly considered and evaluated Plaintiff's subjective complaints, including the Polaski factors. A review of the record revealed Plaintiff was able to take care of his personal needs; to take his children to school and

17

spend time at the school; to clean house; to take care of chickens, cats and a dog; to prepare simple meals; to do yard work with breaks; to watch television and play phone games; to walk up to two miles at a steady pace; and to cut wood and load the wood onto and off of his truck. (Tr. 221-228, 401, 403, 407, 409, 422).

Therefore, although it is clear that Plaintiff suffers with some degree of limitation, he has not established that he was unable to engage in any gainful activity. Accordingly, the Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible for the time period in question.

**D.     The ALJ's RFC Determination:**

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

In the present case, the ALJ considered the medical assessments of non-examining agency medical consultants, Plaintiff's subjective complaints, and his medical records when he determined

Plaintiff could perform light work with limitations. The Court notes that in determining Plaintiff's RFC, the ALJ discussed the medical opinions and set forth the reasons for the weight given to the opinions. Renstrom v. Astrue, 680 F.3d 1057, 1065 (8th Cir. 2012) ("It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians")(citations omitted); Prosch v. Apfel, 201 F.3d 1010 at 1012 (the ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole). Based on the record as a whole, the Court finds substantial evidence to support the ALJ's RFC determination.

###   E.   Hypothetical Question to the Vocational Expert:

After thoroughly reviewing the hearing transcript along with the entire evidence of record, the Court finds that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, the Court finds that the vocational expert's opinion constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude him from performing light work as a cashier II, a marking clerk, and a routing clerk during the time period in question. Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996) (testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

## V.   Conclusion:

Based on the foregoing, the Court recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice. **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal**

**questions of fact.  The parties are reminded that objections must be both timely and specific**

**to trigger de novo review by the district court.**

  DATED this 4th day of  September 2020.


       /s/ *Erin L. Wiedemann*
       HON. ERIN L. WIEDEMANN
       UNITED STATES MAGISTRATE JUDGE